AO 91 (Rev. 11/11) Criminal Complaint AUSA Daniel Mirabelli (312) 353-4305

FILED
9/11/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MEN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GUADALUPE LORENZO SALAZAR-ROCHA | CASE NUMBER: 26 CR 487 |

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 10, 2026, at Cicero, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | possession with the intent to distribute a controlled substance, namely 400 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl ] propanamide), a Schedule II controlled substance |

This criminal complaint is based upon these facts:

_X_ Continued on the attached sheet.

Mario Kloc by MV
MARIO KLOC
Special Agent, Drug Enforcement Administration

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 11, 2026

Maria Valdez
*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, MARIO KLOC, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since approximately June 2022. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that Guadalupe Lorenzo SALAZAR-ROCHA has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging SALAZAR-ROCHA with possession with the intent to distribute fentanyl, a Schedule II controlled substance, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on, among other things: (a) my personal knowledge of the facts and circumstances of the investigation described below; (b) information provided by other law enforcement officers, including written and oral reports that I have received from other law enforcement officers; (c) information

obtained from witnesses, including a confidential source ("CS-1")[1] working for the DEA or other law enforcement agencies; (d) consensually recorded communications; (e) the results of physical surveillance conducted by law enforcement; and (f) my training and experience and the training and experience of other law enforcement officers involved in this investigation.

## I. FACTS ESTABLISHING PROBABLE CAUSE

### a. CS-1 Arranged a Narcotics Transaction with Individual A

4. On September 8, 2026, at the direction of law enforcement, ("CS-1") telephonically contacted an associate located in Mexico ("Individual A"), who CS-1 claimed could facilitate kilogram quantity sales of fentanyl in the Chicagoland area. In summary and in part, according to CS-1 and recordings of these conversations, Individual A told CS-1 that kilograms of fentanyl were available in Chicago, Illinois.[2]

5. During the evening of September 8, 2026, CS-1 spoke with Individual A using the mobile application "WhatsApp" and utilizing Mexico based telephone

[1] CS-1 has not been promised anything for CS-1's cooperation. However, CS-1 is a target of a narcotics and money laundering investigation and is cooperating in hopes of avoiding charges or receiving a favorable sentence if charged. CS-1 has not been paid for his/her cooperation. CS-1 has no criminal convictions. The statements made am information provided to law enforcement by CS-1 are summaries and not verbatim or transcriptions of any statements.

[2] These conversations took place in Spanish, and all translations are preliminary. This investigation included the use of consensually recorded phone calls and text messages. The summaries of recorded conversations in this affidavit do not include reference to all the topics covered during the conversations. Further, the recorded conversations are taken from draft summaries, not final transcripts. The summaries do not include references to all statements made by the speakers on the topics that are described by the speakers. My interpretations are based on information received from CS-1, the contents and contexts of the recorded conversations, events that took place before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

number XX-XXX-XXX-1069. According to CS-1 and based on a recording of the communication, during the ensuing WhatsApp call conversation, Individual A informed CS-1, in summary and in part, that kilograms of fentanyl were available for $22,500 per kilogram. According to the recorded calls, Individual A told CS-1, in summary and in part, that fourteen kilograms of good quality fentanyl was available for sale. During this call and others, Individual A and CS-1 use the word "federales" as a code word for "fentanyl" and a numerical identifier, such as "1" to describe a quantity in kilograms. According to the recorded calls, Individual A told CS-1 that the kilograms of fentanyl was in Cicero, Illinois.

6. On September 9, 2026, CS-1 again telephonically contacted Individual A via a WhatsApp call. According to a recording of the call, CS-1 asked Individual A if he could purchase three kilograms of fentanyl on September 10, 2026. Individual A told CS-1 that the kilograms were available and that CS-1 needed to meet in Cicero to purchase the narcotics. Using WhatsApp, Individual A messaged CS-1 a video recording that depicts multiple rectangular shaped objects. Based on that video, the rectangular shaped objects were white in color and had an imprint of a snake on the face of the object. Individual A told CS-1 to call him when he/she was ready to conduct the transaction.

7. On September 10, 2026, CS-1 informed law enforcement that Individual A told CS-1 via a WhatsApp voice note that the fentanyl was available for purchase after 4p.m. that day. The voice note is recorded. CS-1 further stated that

Individual A informed him/her that the local person meeting with CS-1, later identified as described below as SALAZAR-ROCHA, was at work.

8. Later that day and in the presence of law enforcement, CS-1 contacted Individual A via a telephone call using WhatsApp and asked for a meet location address. The phone call is recorded. Individual A provided CS-1 with address on the 5100 block of West 32nd Place in Cicero, Illinois via WhatsApp text. The message is recorded.

**b. CS-1 Meets with SALAZAR-ROCHA in Attempt to Purchase Narcotics**

9. On September 10, 2026, agents searched CS-1 for contraband, narcotics, or large amounts of currency and found none. Agents equipped CS-1 with audio and video recording equipment and activated the devices. Agents did not provide CS-1 with buy money. Agents surveilled CS-1 as CS-1 drove to the specified location on the 5100 block of West 32nd Place in Cicero.

10. According to CS-1, once CS-1 arrived at the meet location, CS-1 contacted Individual A via a WhatsApp audio call that was partially recorded. Law enforcement, who were listening in to the call, overheard Individual A tell CS-1 to look for a brown truck with a Texas license plate. Law enforcement observed CS-1 park in the vicinity of West 32nd Place and South 51st Avenue in Cicero, Illinois. Law enforcement observed a brown SUV bearing a Texas license plate park behind CS-1's vehicle. Law enforcement then observed a Hispanic male wearing an orange shirt and blue jeans, subsequently identified as described below as SALAZAR-ROCHA, exit the

brown SUV and enter the rear driver side seat of CS-1's vehicle with a brown cardboard box.

11. Law enforcement observed that CS-1's vehicle departed the area with SALAZAR-ROCHA inside. The brown SUV followed, driven by an unidentified individual. Law enforcement observed that CS-1's vehicle returned to the 5100 block of West 32nd Place approximately five minutes later, followed by the brown SUV. The CS-1's vehicle was observed by law enforcement for the entirety of this period, except for approximately five seconds when CS-1's vehicle turned into an alleyway. When the brown SUV parked, the unidentified driver of the brown SUV exited the vehicle and did not return to the vehicle.

12. According to CS-1, when SALAZAR-ROCHA entered CS-1's vehicle, SALAZAR-ROCHA stated in substance "Here's the package." However, SALAZAR-ROCHA became nervous that CS-1 did not have money for the transaction. There is an audio recording from inside the vehicle.

13. Law enforcement then observed SALAZAR-ROCHA exit from the rear driver side of CS-1's vehicle, walk behind CS-1's vehicle, and open the rear passenger side door of both CS-1's vehicle and the rear driver side door of the brown SUV. When SALAZAR-ROCHA exited the vehicle, he was empty-handed. Law enforcement observed what appeared to be a transfer of an object from the rear passenger side CS-1's vehicle to the brown SUV.

14. Law enforcement conducted a search of CS-1's vehicle following the transaction and did not locate the brown cardboard box that SALAZAR-ROCHA had initially placed in the rear passenger seat of CS-1's vehicle.

**c. SALAZAR-ROCHA Possessed Approximately Three Kilograms of Fentanyl**

15. Shortly thereafter, law enforcement observed SALAZAR-ROCHA enter the driver seat of the brown SUV and depart the area. Law enforcement conducted mobile surveillance of the brown SUV. Law enforcement later conducted a traffic stop on the brown SUV in the vicinity of South Cicero Avenue and West 24th Street in Cicero, Illinois.

16. Law enforcement searched the brown SUV. Underneath a blanket on the floor behind the passenger seat law enforcement found a brown cardboard box that appeared to be the brown cardboard box SALAZAR-ROCHA had previously placed in CS-1's vehicle. Within the box, law enforcement located and seized three bricklike objects wrapped in brown and silver tape.

17. Law enforcement officers performed a field test of one of the bricklike objects, which indicated a positive result for the presence of for fentanyl. Law enforcement officers also weighed the bricklike objects. The total weight was approximately 3.2 kilograms. All three bricklike objects are approximately the same size and weight.

18. Law enforcement placed SALAZAR-ROCHA in handcuffs and transported him to a parking lot approximately 1.7 miles away from the traffic stop.

19. As law enforcement began to inform SALAZAR-ROCHA of his Miranda rights, SALAZAR-ROCHA told law enforcement that he wanted to cooperate. SALAZAR-ROCHA stated, in summary and in part, that he wanted to cooperate and that he would tell them where the rest of the drugs were.

20. Following SALAZAR-ROCHA's arrest, law enforcement recovered a Mexican passport from SALAZAR-ROCHA. The name in the Mexican passport was "Guadalupe Lorenzo Salazar-Rocha." SALAZAR-ROCHA appeared to be the person depicted in the passport photograph.

## II. CONCLUSION

21. Based on the foregoing, I respectfully submit that there is probable cause to believe that, on or about September 10, 2026, Guadalupe Lorenzo SALAZAR-ROCHA possessed with intent to distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

Mario Kloc by MV

MARIO KLOC
Special Agent, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone September 11, 2026.

Honorable MARIA VALDEZ
United States Magistrate Judge